UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: RENEE D. NEWELL,

                  Debtor.

_____/

WAYNE COUNTY,

                  Appellant,

v.

RENEE D. NEWELL,

                  Appellee.

_____/

Case Number 15-14276
Bankr. Number 15-51625
Adversary Case Number 15-04923
Honorable David M. Lawson

## OPINION

When debtor Renee Newell lost her whistleblower case against the County of Wayne, the state court awarded the County nearly $190,000 in costs and attorney's fees under a fee-shifting provision of the Michigan Court Rules. Then, when Newell filed a Chapter 7 bankruptcy petition and listed that obligation as a debt, Wayne County filed an adversary proceeding objecting to its dischargeability, contending that it was a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." *See* 11 U.S.C.A. § 523(a)(7). The bankruptcy court granted Newell's motion to dismiss Wayne County's complaint, finding that the award did not fit the description of a "fine, penalty, or forfeiture" as used in section 523(a)(7). Wayne County appealed, and the Court heard oral argument on May 11, 2016. The Court agrees with the bankruptcy court that Wayne County's strained reading of section 523(a)(7) does not support its position that Newell's debt for the award of costs and attorney's fees in the state

court case is a non-dischargeable debt under the Bankruptcy Code.  Therefore, the decision of the bankruptcy court will be affirmed.

I.

The parties agree that the underlying facts of the case are undisputed and the appeal presents a pure question of law for the Court to decide.  Debtor and appellee Rene Newell is a former employee of appellant Wayne County.  She was terminated by the County in 2012.  She subsequently filed two civil lawsuits against the County, one in state court, alleging violations of the state whistle-blower protection statute, and another in federal district court, via 42 U.S.C. § 1983, alleging various constitutional transgressions relating to the execution of a search warrant at Newell's residence and an ensuing criminal investigation by officers of the County's sheriff's department.

The case in state court was referred to case evaluation under Michigan Court Rule 2.403, which contains a fee-shifting provision for a party that rejects the evaluation of the case's value and does not improve his or her position at a subsequent trial.  Both parties rejected the evaluators' assessment of $290,000 in Newell's favor, and the case proceeded to trial.  After a two-week trial, the jury returned a verdict of no-cause of action on all of the plaintiff's claims.  The County later sought, and the state court awarded, "actual costs" to Wayne County under the case evaluation rule in the amount of $188,961.60, consisting of $184,690 in attorney's fees and $4,271.60 in costs.

On August 4, 2015, Newell filed a voluntary petition for bankruptcy under Chapter 7, in which she sought to discharge, among other things, her obligation to pay the case evaluation award of costs against her.  The County filed an adversary complaint in the Chapter 7 case seeking a declaration that Newell's debt to it for more than $180,000 in case evaluation costs was a

-2-

nondischargeable obligation under 11 U.S.C. § 523(a)(7). After the debtor filed a motion to dismiss, and the bankruptcy court held a hearing, the court ruled that the obligation to pay case evaluation sanctions was not a "fine, penalty, or forfeiture" subject to section 523(a)(7), and, moreover, the amount due was not "payable to and for the benefit of a government unit" in its governmental capacity. The bankruptcy court dismissed the County's adversary complaint, and this appeal followed.

## II.

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1); *Central States, Se. & Sw. Areas Pension Fund v. U.S. Truck Co. Holdings, Inc.* (*In re U.S. Truck Co. Holdings*), 341 B.R. 596, 599 (E.D. Mich. 2006). The Sixth Circuit has held that "finality 'is considered in a more pragmatic and less technical way in bankruptcy cases than in other situations.'" *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning)*, 86 F.3d 482, 488 (6th Cir. 1996)). "Therefore, where an order in a bankruptcy case finally dispose[s] of discrete disputes within the larger case, it may be appealed immediately." *Ibid.* (internal quotation marks omitted); *see also Morton v. Morton (In re Morton)*, 298 B.R. 301, 303 (B.A.P. 6th Cir. 2003) (noting that a bankruptcy court's order overruling a Chapter 13 debtor's objection to claims was a final order because it ended litigation on the merits and left nothing for the court but the execution of judgment).

"The bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed de novo." Fed. R. Bankr. P. 8013; *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 935-36 (6th Cir. 2010) (citing *Behlke v. Eisen (In re Behlke)*, 358 F.3d

429, 433 (6th Cir. 2004)).  The bankruptcy court announced an opinion from the bench, stating that

Wayne County's complaint failed to state a claim for which relief can be granted, and the debtor was

entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6).  The court also stated that no

facts were in dispute and the debtor was entitled to summary judgment as a matter of law under Rule

56.  Either way, the bankruptcy court's decision in this case was based on a purely legal issue, to

which this Court gives fresh review.

III.

The operative statute here reads as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does
> not discharge an individual debtor from any debt [] to the extent such debt is for a
> fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and
> is not compensation for actual pecuniary loss.

11 U.S.C. § 523(a)(7).  "To fall within the provisions of this section, a debt must satisfy three

requirements: (1) it must be 'for a fine, penalty, or forfeiture'; (2) it must be 'payable to and for the

benefit of a governmental unit'; and (3) it must not be 'compensation for actual pecuniary loss.'"

*In re Hollis*, 810 F.2d 106, 108 (6th Cir. 1987) (citing *Kelly v. Robinson*, 479 U.S. 36, 51-52 (1986)).

Applying this statute requires a bit of interpretation, but not much.  In construing the

meaning of a statute, the court must seek the intent of the legislature and refer first to the statute's

plain language, *Chrysler Corp. v. C.I.R.*, 436 F.3d 644, 654 (6th Cir. 2006); *Herman v. Fabri-

Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002), indulging "the assumption that the ordinary

meaning of that language accurately expresses the legislative purpose."  *Discount Tobacco City &

Lottery, Inc. v. United States*, 674 F.3d 509, 549 (6th Cir. 2012) (quoting *Park 'N Fly, Inc. v. Dollar

Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)) (quotations omitted).

A.

Did the state court's award to the County of costs and attorney's fees amount to a "fine, penalty, or forfeiture"?  The County does not characterize the award as a fine or forfeiture, but it does contend that it is a "penalty."  To assess that claim, it is useful to see how Michigan courts apply the fee shifting provision in their court rule.

The Michigan Court Rules include a procedural framework for resolution of civil lawsuits by the alternative means of case evaluation, in which a panel of three lawyers appointed by the trial court reviews the case and renders an assessment of what monetary relief, if any, the plaintiff should receive.  Nearly every case "in which the relief sought is primarily money damages or division of property," Mich. Ct. R. 2.403(A)(1), is subjected to the process.  After reviewing written summaries from the parties and holding a hearing, the case evaluation "panel will make an evaluation and notify the attorney for each party of its evaluation in writing."  Mich. Ct. R. 2.403(K)(1).  Then, within 28 days, the parties each must choose whether to accept or reject the "award" of the case evaluation panel, and must file their formal acceptance or rejection in writing with the court.  Mich. Ct. R. 2.403(L)(1).  If all the parties accept the award, the case is terminated by judgment or order of dismissal.  Mich. Ct. R. 2.403(M)(1).  But if one or both parties reject, "the action proceeds to trial in the normal fashion."  Mich. Ct. R. 2.403(N)(1).

The rule builds in an incentive to accept a panel's award: "If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation."  Mich. Ct. R. 2.403(O)(1).  And if both parties reject, "a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation."  *Ibid.*  The rule defines the recovering party's

-5-

"actual costs" as "(a) those costs taxable in any civil action, and (b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation."  Mich. Ct. R. 2.403(O)(6).

Wayne County supports its argument that an award of "actual costs" is a penalty primarily by selecting phrases from state court decisions that call such awards "sanctions" or "penalties." *E.g., Smith v. Khouri*, 481 Mich. 519, 751 N.W.2d 472 (2008) (explaining that "[t]he purpose of this fee-shifting provision is to encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it develops, 'should' have accepted but did not").  However, that argument ignores the text and context of the rule, and certain rules of interpretation.

To begin, although state courts' decisions describing state laws may be useful when deciding whether the debt created amounts to a "penalty" under section 523(a)(7), the proper construction of the Bankruptcy Code is a question of federal law.  *In re Thompson*, 16 F.3d 576, 578 (4th Cir. 1994) ("In any case, notwithstanding our respect for the decision of a state court, we cannot allow it to occasion a result at war with federal bankruptcy law."); *In re Gi Nam*, 273 F.3d 281, 288 (3d Cir. 2001) ("Although the label that state law affixes to a certain type of debt cannot of itself be determinative of the debt's character for purposes of the federal dischargeability provisions, such state-law designations are at least helpful to courts in determining the generic nature of such debts under the law that most directly governs their creation, e.g., whether they are penal or civil, fines or forfeitures."); *In re Hickman*, 260 F.3d 400, 405 (5th Cir. 2001) (Whether the bail bond debt of a surety is a forfeiture under § 523(a)(7) is a question of federal law.  But we look to state law to determine whether the debt at issue possesses the attributes of a forfeiture." (citations omitted)).  The

-6-

decisions of the state courts certainly are not controlling with respect to the authoritative construction of specific terms used in the Code.  *Thompson*, 16 F.3d at 578.

Next, the state law that provides the most "help" in characterizing the fee shifting provision is the language of the Michigan Court Rule itself.  Neither the term "penalty" nor "sanction" is used anywhere in the operative provisions of Michigan Court Rule 2.403(O).  The ordinary meaning of the term "penalty" denotes "[p]unishment imposed on a wrongdoer, usually in the form of imprisonment or fine; especially a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)."  Black's Law Dictionary (10th ed. 2014).  Nothing in the plain text of the rule suggests that an award of a litigant's "actual costs" constitutes any sort of "penalty" as that term ordinarily is understood or as it is used in context in the Bankruptcy Code.  Contrast that with a provision in the rule that assesses a "$150 penalty" on a party for filing a late case evaluation summary.  *See* Mich. Ct. R. 2.403(I)(2).

Moreover, the case evaluation rule explicitly defines the phrase "actual costs," to include only "(a) those costs taxable in any civil action, and (b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation."  Mich. Ct. R. 2.403(O)(6).  That definition stands in contrast with the ordinary meaning of the term "penalty" as "a sum of money *exacted as a punishment* [and] *as distinguished from compensation for the injured party's loss*."  Nothing in the language of the rule establishes, or even suggests, that an award of "actual costs" to an opposing party after injudicious rejection of a case evaluation award qualifies as any sort of "punishment," regardless of the fact that the rule obviously is intended to promote settlement and discourage unjustified persistence in unproductive litigation.  *C.f. Kelly*, 479 U.S. at 52 (holding that a judgment of restitution on a

-7-

criminal conviction was nondischargeable in part because "the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant"); *see also In re Hollis*, 810 F.2d at 108 ("[T]he issue is whether [the imposition of costs in a criminal case] is a penal sanction or rather a pecuniary measure designed to compensate the State for the expense it had incurred in prosecuting the criminal action against appellee.").

Finally, even the case upon which the County places its primarily reliance, *Smith v. Khouri*, suggests that the purpose of the fee shifting provision is compensatory rather than punitive. That court, in passing, observed:

> The purpose of this fee-shifting provision is to encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it develops, "should" have accepted but did not. This encouragement of settlements is traditional in our jurisprudence, as it deters protracted litigation with all its costs and also shifts the financial burden of trial onto the party who imprudently rejected the case evaluation. This rule, however, is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls. Rather, it only permits an award of a *reasonable* fee, i.e., a fee similar to that customarily charged in the locality for similar legal services, which, of course, may differ from the *actual* fee charged or the highest rate the attorney might otherwise command.

*Smith*, 481 Mich. 519, 527-28, 751 N.W.2d 472, 478. The *Smith* court's reasoning plainly conveys the view that the case evaluation rule is a "fee-shifting provision" intended only to compensate a party that is willing to enter into a settlement for expenses caused by its adversary's injudicious refusal to compromise the case. The court did tangentially  refer to the shifting of fees as a "financial penalt[y]." But it is apparent that the court described the costs burden as a "penalty" only because, under the usual "American Rule," a party would not have to pay any part of its opponent's costs and attorney fees, even if it failed to prevail at trial and walked away with nothing.

-8-

The case evaluation costs awarded under Michigan Court Rule 2.403(O) cannot be fairly characterized as a "penalty" as that term is used in section 523(a)(7) of the Bankruptcy Code.

B.

Regardless whether the mediation costs in this case were "payable to and for the benefit of a governmental unit" — a proposition which the bankruptcy court rejected — there is no doubt that those costs represented "compensation for actual pecuniary loss."

In *Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006), the court of appeals held that a similar award imposed to compensate for the costs of unneeded litigation was compensatory in nature and therefore did not fall within the exceptions to discharge under section 523(a)(7). In that case, the appellee attorney had represented the appellant as a client in a wrongful termination case against Ford Motor Company. The appellant did not prevail in the employment case and subsequently sued his attorney in federal court for malpractice. Following numerous instances of egregious and unprofessional conduct by the attorney defendant in the malpractice case, the federal district court entered a judgment against the attorney for sanctions under Federal Rule of Civil Procedure 37(b)(2). The district court found that the attorney's conduct amounted to an abuse of the judicial process, and that it was "willful and wanton and constitute[d] a complete disregard for the Court and for the obligations his status as a party to this lawsuit and as an attorney place upon him." *Hughes*, 469 F.3d at 476.

The attorney later filed for bankruptcy, and, rejecting a challenge to dischargeability of the debt owed to the former client, the bankruptcy court determined that the award of civil sanctions was not subject to the exceptions to discharge under section 523(a)(7). On appeal, the Sixth Circuit agreed, finding that the sanctions were not "payable to and for the benefit of a governmental unit."

-9-

But more to the ppoint of the present case, the Court held that the sanctions were not covered by section 523(a)(7) because they were "explicitly calculated to compensate" the plaintiff in the malpractice action for the expense of needless litigation caused by the defendant's misconduct:

> We note that even if we were to accept Hughes's contention that the judgment is payable "to and for the benefit of a governmental unit," Hughes cannot prevail. The final requirement under 11 U.S.C. § 523(a)(7) for excepting a debt from discharge is that the debt is "not compensation for actual pecuniary loss." *In this case, the debt owed by Sanders was a default judgment in an amount explicitly calculated to compensate Hughes for malpractice damages, litigation costs and attorney's fees. That the judgment is a default judgment entered by the district court in part as a sanction for Sanders's inexcusable and unprofessional conduct does not change the judgment's compensatory character.* Accordingly, the default judgment against Sanders cannot be characterized as nondischargeable under 11 U.S.C. § 523(a)(7).

*Hughes*, 469 F.3d at 479 (emphasis added).

The County insists that the cost award here did not constitute compensation for any actual loss, because its corporation counsel has a duty to defend the County in any civil action, and that duty would have been carried out regardless of the cost of the litigation. The County relies on a number of decisions involving assessment of costs by state attorney discipline boards for the idea that an assessment of costs and fees in such cases is not dischargeable because it serves the punitive purpose of enforcing disciplinary findings. However, the "sanctions" in this case were not awarded to "discipline" anyone, and nothing in the text of the court rule or the state court's judgment suggests that there was any punitive purpose embodied in the award of "actual costs" of the litigation to the prevailing party in the whistleblower lawsuit. The bankruptcy court cited *Hughes*, and the appellee relied on it in her briefing, but the County did not address the reasoning of that decision anywhere in its initial brief or reply, other than in a passing reference to the fact that it involved civil sanctions against a private party. It does not explain how, under any sensible reading of the phrase "actual costs," the award of case evaluation "sanctions" could be construed as anything other than

-10-

compensation for the unwarranted expense of fruitless litigation.  The omission, most likely, is because that aspect of the case is indistinguishable and its reasoning unassailable.

Section 523(a)(7) of the Bankruptcy Code does not stand as an obstacle to dischargeability of Newell's $188,961.60 debt to Wayne County.

IV.

The bankruptcy court correctly concluded that appellant Wayne County's complaint in the adversary proceeding failed as a matter of law.

Accordingly, the judgment of the bankruptcy court is **AFFIRMED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 26, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2016.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

---